[Cite as *State v. Moreno*, 2017-Ohio-479.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2016-CA-9 |
| | : | |
| v. | : | T.C. NO. 04CR46 |
| | : | |
| JOSE MORENO | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___10th___ day of _____February_____, 2017.

. . . . . . . . . . .

JANNA L. PARKER, Atty. Reg. No. 0075261, Assistant Prosecuting Attorney, 201 W. Main Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

ANTHONY R. CICERO, Atty. Reg. No. 0065408, 500 East Fifth Street, Dayton, Ohio 45402
        Attorney for Appellant Victoria Webber

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Victoria Webber, the former spouse of Defendant Jose Moreno, Jr., appeals from a judgment of the Miami County Court of Common Pleas, which overruled her Motion for the Return of Property. For the following reasons, the trial court's judgment will be

affirmed.

## I. Background and Procedural History

{¶ 2} According to the record, Webber and Moreno met in 1999 and were married in 2000. Beginning shortly before their marriage, Webber and Moreno lived together in a house, owned by Webber, in Tipp City. Both Webber and Moreno were professional wrestlers.

{¶ 3} On November 4, 2003, a Dayton Police Department detective contacted the Miami County Sheriff's Office regarding a package that Dayton police officers had interdicted at the Dayton International Airport. The package was addressed to Moreno at his residence in Tipp City. Upon opening the package pursuant to a search warrant, the Dayton Police had discovered that the package contained five different kinds of steroids, amounting to 23 times the bulk amount. Dayton police officers confirmed the contents of the package with the Miami Valley Regional Crime Lab.

{¶ 4} Based on the information provided by the Dayton Police Department, Detective Eschelman, a sheriff's deputy in Miami County, obtained a search warrant for Moreno's Tipp City residence. The warrant was executed the same day, November 4, 2003.

{¶ 5} When the police went to Moreno's residence to execute the warrant, Webber answered the door; she was the only individual present. Sgt. Jason Moore videotaped the search, and he testified that the collected evidence was located primarily in the master bedroom, an office area, and a hallway closet. The search warrant inventory reflects that the Sheriff's Office collected 30 items, including currency, pills, bottles of steroids, hypodermic needles, scales, ledgers, laptop computers, computer equipment and

storage devices, and syringes.

{¶ 6} On February 11, 2004, Moreno was indicted on one count of possession of steroids and one count of trafficking in steroids; the quantity in both counts was equal to or more than five times the bulk amount, but less than 50 times the bulk amount. The indictment did not include a forfeiture specification.

{¶ 7} The indictment is the only document in the record related to the charges against Moreno. Moreno has not been arrested for the offenses, and the case has not proceeded further, apparently due to Moreno's absence from Ohio. (Webber and Moore both testified, in late 2011, that they believed Moreno was living in California.)

{¶ 8} On July 20, 2011, more than seven years later, Webber filed a Motion for Return of Property, pursuant to R.C. 2981.03(A)(4), seeking the return of several items seized on November 4, 2003:

- $9,100 in United States currency

- Miscellaneous floppy disks and CDs

- A Rolodex

- Miscellaneous ledgers, notebooks and address books

- A Gateway Laptop, serial number 1097249103

- A Dell Laptop, serial number 0009321C128008CA2190

- An Intel Powered CPU

- A triple beam scale

{¶ 9} Webber supported her motion with an affidavit, stating that on November 4, 2003, she was married to Moreno but was the sole owner of the house in which they resided. Webber further averred that she was unaware that Moreno was involved with

the "purchase, use, or distribution of steroids," that several items listed on the search warrant were her lawful possessions, and that all items claimed by her had "no association with any illegal activity, are not contraband, are not the subject of any forfeiture proceeding, are no longer needed as evidence in any case, and are all lawful for her to possess." Webber stated that she has never been charged with any offense arising from the events of November 4, 2003. Webber also attached a copy of the search warrant, the search warrant affidavit, and the search warrant inventory.

{¶ 10} A hearing on the motion was held on December 5, 2011. Webber testified that she remained in the kitchen with several police officers during the search, answered many questions, and told the officers where she kept her "bill money." Webber stated that she had a lockbox under her bed and that cash was kept inside in individual envelopes labeled rent, utilities, phone, and the like; Moreno did not have a key to the lockbox. Webber testified that it was her money in the lockbox, and that she earned money from selling wrestling videos over a website; Webber also obtained money from live wrestling shows. Webber had a credit card machine in the house to process payments for videos. Webber indicated that she would put the money in envelopes, deposit the cash, and then write a check for the bills.

{¶ 11} On cross-examination, Webber acknowledged that Moreno's passport and birth certificates were in the lockbox. Both she and Moreno used the computers. Webber denied that she was aware that Moreno was involved in trafficking of steroids.

{¶ 12} Sgt. Moore testified about the basis for and execution of the search warrant. He described the evidence that was found in the home and where the evidence was located, including a large amount of anabolic steroids and syringes in the master

bedroom. Moore also testified that a metal lockbox, found under the bed, contained several white envelopes with currency ($9,100), Moreno's passport and birth certificate, and a Western Union document in Moreno's name. Moore further testified that an office area contained several computers, storage materials, ledgers, and shipping receipts, which were relevant to the trafficking in steroids. Moore testified that all three computers were forensically analyzed and were found to contain evidence of researching, purchasing, and selling anabolic steroids. Moore further testified that the ledgers appeared to relate to steroid sales, rather than wrestling video sales, because the ledgers indicated cash transactions for particular quantities, such as grams or milliliters.

{¶ 13} When asked about law enforcement's efforts to locate Moreno, Sgt. Moore responded:

> We attempted to gain that information from [Webber] for a time period after the search warrant and after – before the indictment and following the indictment. We've contacted law enforcement agencies. We had information that he was in California. We've contacted the law enforcement agencies to send them by the most current and recent addresses that we have with – with no success. We've also Googled him and that's the information we come up with. We haven't been able to actually identify and ascertain where he's actually living at.

{¶ 14} The court did not promptly rule on the motion. On December 30, 2015, four years after the hearing, Webber filed a Motion for a Decision regarding her Motion for Return of Property.

{¶ 15} On April 12, 2016, the trial court denied Webber's motion. In its ruling, the

trial court "did not find credible" Webber's testimony "about her ownership of the cash seized by law enforcement." The court found Sgt. Moore's testimony to be credible. The trial court concluded that Webber was not entitled to the return of the seized property, pursuant to R.C. Chapter 2981. It reasoned:

> Although the State of Ohio has not located Mr. Moreno to serve him with the indictment, it has attempted to locate him to proceed with a criminal proceeding. All of the property seized under the search warrant is either contraband or the proceeds of criminal activity by Jose Moreno, or evidence that the State intends to use in the prosecution of Mr. Moreno.

{¶ 16} Webber appeals from the trial court's ruling, raising two assignments of error.

## II. Denial of Motion to Return Property

{¶ 17} Webber's assignments of error state:

1. The trial court erred by finding Victoria Webber's Motion for Return of Property to be without merit, because the trial court analyzed the case under the forfeiture statutes when there can be no forfeiture of the property under Ohio law.

2. Assuming Ohio forfeiture law applies to Victoria Webber's Motion for Return of Property, the trial court erred by incorrectly applying that law.

{¶ 18} The property seized from Webber's residence on November 4, 2003, was taken pursuant to a search warrant. "Property seized under a warrant shall be kept for use as evidence by the court which issued the warrant or by the law enforcement agency which executed the warrant." Crim.R. 41(D)(1); see also R.C. 2933.26 (property seized

to be kept by court) and R.C. 2933.27 (disposition of seized property before trial). R.C. 2981.11(A)(1) requires that any property seized pursuant to a warrant and that is in the custody of a law enforcement agency "be kept safely by the agency, pending the time it no longer is needed as evidence or for another lawful purpose."

{¶ 19} R.C. Chapter 2981 permits "[a] law enforcement officer [to] seize property that the officer has probable cause to believe is property subject to forfeiture." R.C. 2981.03(A)(2). Such property includes "contraband," "proceeds" from the commission of an offense, and "instrumentalities" involved in the commission of felonies and certain other offenses. *See* R.C. 2981.01(B)(13) (defining "property subject to forfeiture"). A State or political subdivision acquires provisional title to property subject to forfeiture, upon commission of an offense giving rise to forfeiture. R.C. 2981.03(A)(1). This provisional title is subject to claims of third parties and a final forfeiture adjudication. R.C. 2981.03(A)(1); *State v. Jamison*, 2d Dist. Montgomery No. 23211, 2010-Ohio-965, ¶ 21.

{¶ 20} R.C. 2981.02 allows the forfeiture of contraband, proceeds, and certain instrumentalities.

A prosecuting attorney may then pursue forfeiture of seized property in a criminal proceeding under R.C. 2981.04, a civil proceeding under R.C. 2981.05, or both. R.C. 2981.03(F). Criminal forfeiture is initiated by including in the charging instrument a specification consistent with R.C. 2941.1417 or by providing the defendant with "prompt notice," in conformity with Crim.R. 7(E), that the property is subject to forfeiture. R.C. 2981.04(A)(1) and (A)(2). Civil forfeiture is initiated by filing "a complaint requesting an order that forfeits the property to the state or a political

subdivision."   R.C. 2981.05(A).

(Citation omitted.) *State v. Recinos*, 5th Dist. Richland No. 14CA9, 2014-Ohio-3021, ¶ 21.

{¶ 21} A person with an interest in the seized property may seek a conditional release of property subject to forfeiture.   R.C. 2981.03(D) provides procedures for seeking conditional release of property.   Conditional release is unavailable where, for example, there is probable cause that "the property is contraband, property that must be held for a reasonable time as evidence related to an offense, or property that is likely to be used in additional offenses."   R.C. 2981.03(D)(3).

{¶ 22} R.C. 2981.03(A)(4) permits a person "aggrieved by an alleged unlawful seizure of property" to seek relief from seizure.   It provides:

A person aggrieved by an alleged unlawful seizure of property may seek

relief from the seizure by filing a motion in the appropriate court that shows

the person's interest in the property, states why the seizure was unlawful,

and requests the property's return.   If the motion is filed before an

indictment, information, or a complaint seeking forfeiture of the property is

filed, the court shall promptly schedule a hearing on the motion, and at the

hearing the person shall demonstrate by a preponderance of the evidence

that the seizure was unlawful and that the person is entitled to the property.

* * * If the motion is filed by a third party after an indictment, information, or

complaint seeking forfeiture of the property has been filed, the court shall

treat the motion as a petition of a person with an alleged interest in the

subject property, pursuant to divisions (E) and (F) of section 2981.04 of the

Revised Code [criminal forfeiture provisions related to claims by third

parties].

{¶ 23} The State has not pursued forfeiture of the property seized from Webber's and Moreno's residence on November 4, 2003, either through a criminal or civil proceeding. The indictment does not contain a forfeiture specification, precluding criminal forfeiture under R.C. 2981.04.

{¶ 24} Although Webber's motion was filed after Moreno was indicted, it was not filed after an "indictment, information, or a complaint *seeking forfeiture of the property*" was filed. Accordingly, pursuant to R.C. 2981.03(A)(4), upon the filing of Webber's motion, the trial court was required to schedule a hearing, at which Webber was required to prove, by a preponderance of the evidence, that the seizure was unlawful and that she was entitled to the property. Because the State did not pursue criminal forfeiture, the trial court did not need to treat Webber's motion as a third-party petition under R.C. 2981.04.

{¶ 25} Webber claims that the trial court erred in analyzing her motion under the forfeiture statutes, because the State cannot seek forfeiture under R.C. 2981.04 (criminal forfeiture) or R.C. 2981.05 (civil forfeiture). Webber argues that no criminal forfeiture has been pursued and that a civil forfeiture claim must be brought within 60 days of the seizure, in accordance with R.C. 2981.03(F).

{¶ 26} Initially, we note that Webber's motion was brought pursuant to R.C. 2981.03(A)(4), and she specifically requested that the trial court "promptly schedule a hearing so that Ms. Webber can demonstrate by a preponderance of the evidence that the seizure was unlawful, and that she is entitled to the property." Accordingly, we find it confusing for Webber to assert that the trial court should not have analyzed her motion

under that statute. Regardless, R.C. 2981.03(A)(4) encompasses claims for the return of property that has been seized, even when the State has not pursued forfeiture. The trial court properly analyzed Webber's motion under R.C. 2981.03(A)(4).

{¶ 27} Second, we find no fault with the trial court's denial of Webber's motion. Moreno has been indicted for possession of steroids and trafficking in steroids; Moreno has not been served with the indictment, and the charges remain pending. The items seized from Webber's and Moreno's home were seized pursuant to a search warrant and constitute evidence in the case against Moreno.

{¶ 28} As stated above, to be entitled to the return of the property at this juncture, Webber was required to demonstrate that the seizure was unlawful and that she was entitled to the property. Nothing in Webber's (or Sgt. Moore's) testimony established that the search warrant was defective, that the warrant was unlawfully executed, or that the officers exceeded the scope of the warrant when they seized the property listed on the search warrant inventory. Sgt. Moore's testimony, which the trial court found credible, demonstrated that the computer equipment, ledgers, and the scale constituted instrumentalities of trafficking/possession of steroids, and that the cash located in the metal lockbox constituted proceeds of those offenses. The trial court expressly found that Webber's testimony about her ownership of the money was not credible. There was little evidence regarding the floppy disks, CDs, and Rolodex, but the burden was on Webber to demonstrate that she was entitled to their return. Upon review of the record, the evidence before the trial court supported a conclusion that the seized items were either contraband, proceeds, or instrumentalities, and that they constituted evidence to be used by the State in the prosecution of Moreno.

{¶ 29} Webber argues on appeal that the trial court should have considered whether the seized property continued to have evidentiary value and whether photographs of the items would have been an adequate substitute. Webber cites Crim.R. 26, which states:

> Physical property, other than contraband, as defined by statute, under the control of a Prosecuting Attorney for use as evidence in a hearing or trial should be returned to the owner at the earliest possible time. To facilitate the early return of such property, where appropriate, and by court order, photographs, as defined in Evid. R. 1001(2), may be taken of the property and introduced as evidence in the hearing or trial. The admission of such photographs is subject to the relevancy requirements of Evid. R. 401, Evid. R. 402, Evid. R. 403, the authentication requirements of Evid. R. 901, and the best evidence requirements of Evid. R. 1002.

Webber did not raise Crim.R. 26 in the trial court or argue that photographs of some of the property could replace the physical evidence at trial. Therefore, we will not consider this argument.

{¶ 30} Webber's assignments of error are overruled.

### III. Conclusion

{¶ 31} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Janna L. Parker
Anthony R. Cicero

Hon. Christopher Gee